IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 05-00397-01-CR-W-GAF |
| LEANDRO DIAZ-ROA, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
TO ACCEPT DEFENDANT'S GUILTY PLEA**

On November 14, 2005, I held a change-of-plea hearing after this case was referred to me by United States District Judge Gary A. Fenner. I find that Defendant's plea was voluntary and therefore recommend that it be accepted.

*I. BACKGROUND*

On November 1, 2005, an indictment was returned, charging Defendant with illegal re-entry into the United States by a deported alien, in violation of Title 8, United States Code, § 1326(a) and (b)(2). A change-of-plea hearing was held on November 14, 2005. Defendant was present, represented by appointed counsel Stephen Moss. The government was represented by Assistant United States Attorney David Barnes. The proceedings were recorded and a transcript of the hearing was filed on November 15, 2005.

*II. AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and

the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. See Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991); Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. Torres, 258 F.3d at 795. Applying the Peretz holding and adopting the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. (quoting Williams, 23 F.3d at 633). Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case

2

and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. FINDINGS OF FACT

1. The parties consented to the delegation of the change-of-plea hearing to the magistrate judge (Tr. at 2-3).

2. On November 1, 2005, an indictment was returned charging Defendant with unlawfully entering the United States after having been deported (Tr. at 3). I read the charge against Defendant and Defendant indicated that he understood the nature of this charge (Tr. at 3-4).

3. The statutory penalty for the charged offense is not more than two years in prison, a fine of up to $250,000, a supervised release term of not more than three years, and a $100 mandatory special assessment fee (Tr. at 4). Defendant was informed of the penalty ranges and indicated that he understood them (Tr. at 4).

4. Defendant was advised of the following:

   a. That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 4-5);

   b. That he has the right to assistance of counsel throughout the trial (Tr. at 5);

c. That he is presumed innocent, and the government has the burden of coming forward to prove Defendant's guilt beyond a reasonable doubt (Tr. at 5);

d. That Defendant's attorney would have the opportunity to cross-examine the government's witnesses (Tr. at 5-6);

e. That Defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that Defendant may not testify at trial (Tr. at 6);

f. That Defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 6-7); and

g. That Defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 7-8).

5. Defendant was informed and understood that by pleading guilty, he was giving up all of the rights described above (Tr. at 8).

6. Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 8-9). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 9). Defendant stated that he understood (Tr. at 9).

7. Government counsel stated that the government's file was disclosed to defense counsel in its entirety (Tr. at 9). Mr. Barnes further stated that the government's evidence would be as follows: The government would first ask the court to take judicial notice that Defendant is sitting in the courtroom in the United States (Tr. at 10). The government would then produce evidence that Defendant was deported on or about May 19, 2005, through various certified records maintained by

4

Immigration (Tr. at 10). It would also provide Immigration certification that Defendant had neither sought nor been given consent to re-enter the United States (Tr. at 10). Finally, the government would produce the testimony from the law enforcement officer regarding Defendant's September 12, 2005 arrest (Tr. at 10).

8. Defense counsel stated that he had reviewed the government's file and believed that it was a smart move for his client to plead guilty (Tr. at 9-10).

9. Defendant was placed under oath (Tr. at 11) and admitted the following: Sometime around September 12, 2005, he was in the Western District of Missouri in the United States of America (Tr. at 11). He had previously been deported on May 19, 2005 (Tr. at 11). When Defendant re-entered the United States after his deportation, he did not have permission from the appropriate authorities and knew it was unlawful to do so (Tr. at 11). Defendant believed he was guilty of this charge (Tr. at 12). In his own words, Defendant stated that he was deported sometime around May of this year and returned to the United States for financial reasons (Tr. at 12). In re-entering the United States, Defendant met a man called "Coyote" at the Mexico border that he paid to get him across the border into the United States (Tr. at 12-13). Defendant returned to the United States to work as a painter and at a car wash, since the money is better in the United States than in his homeland (Tr. at 13). Defendant was originally from Colombia, South America, but entered the United States through Mexico (Tr. at 13-14).

10. The parties did not reach a formal plea agreement (Tr. at 14-15). Instead, due to the straightforward nature of the case and their understanding of the Sentencing Guidelines, the parties both agreed it would be best to set the case for sentencing as soon as possible (Tr. at 14-15). Defendant understood that there was no agreement between him and the government about what

5

Case 4:05-cr-00397-GAF   Document 24   Filed 11/17/05   Page 5 of 7

sentence he should receive (Tr. at 15).

11.     No one made any threats or any other promises in order to get Defendant to plead guilty (Tr. at 15).

12.     Defendant was satisfied with the representation he has received from Mr. Moss (Tr. at 15). There was nothing he has done that Defendant did not want him to do, and nothing he wanted him to do that he did not do (Tr. at 15).

13.     Defendant is 32 years old and completed two years of high school (Tr. at 15-16). He had no difficulty understanding the proceeding (Tr. at 16). Defendant has no mental health concerns that would prevent him from entering an intelligent and voluntary plea of guilty to this charge (Tr. at 16). Defendant was not under the influence of any drugs or anything else that would cloud his ability to intelligently waive his right to a jury trial (Tr. at 16).

14.     Defendant tendered a plea of guilty to the crime charged in the indictment (Tr. at 16-17).

15.     The parties waived the ten-day objection period to the Report and Recommendation (Tr. at 17-18).

### V. ELEMENTS OF THE CHARGED OFFENSE

The elements necessary to sustain a conviction for unlawfully re-entering the United States after being deported are as follows: (1) Defendant is an alien; (2) Defendant was previously deported; and (3) Defendant re-entered the United States without proper permission. United States v. Rodriguez-Arreola, 270 F.3d 611, 619 n.15 (8th Cir. 2001) (quoting United States v. Gomez-Orozco, 188 F.3d 422, 425 (7th Cir. 1999)).

### V. CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a magistrate judge for issuance of a report and recommendation on whether Defendant's guilty plea should be accepted.

2. Defendant has consented to having his plea taken by a magistrate judge.

3. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crime charged in this indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting Defendant's guilty plea and adjudging Defendant guilty of the offense charged.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
November 16, 2005